UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                   :

ESSO EXPLORATION & PRODUCTION
NIGERIA LTD., *et ano.*,                     :         14cv8445

                Petitioners,         :         <u>OPINION & ORDER</u>

              -against-                  :

NIGERIAN NATIONAL PETROLEUM   :
CORPORATION,
                                                   :
                Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, United States District Judge:

        The Central Bank of Nigeria ("CBN"), a non-party, moves to quash subpoenas served by Esso Exploration and Production Nigeria Ltd. and Shell Nigeria Exploration and Production Company Ltd. ("Esso") on a number of U.S. banking institutions. For the reasons that follow, CBN's motion to quash is granted in part and denied in part.

BACKGROUND

        Esso is conducting jurisdictional discovery to ascertain whether this Court has a basis to assert personal jurisdiction over Nigerian National Petroleum Corporation ("NNPC"). To that end, in February 2017, Esso subpoenaed ten third party banking institutions for information on accounts held by NNPC. Those subpoenas also sought account information for non-parties CBN and other Nigerian entities on the basis that NNPC controlled or benefited from some of their accounts.

        CBN's challenge appears to lie primarily with its JPMorgan accounts.[1] The

---

[1]     CBN acknowledges that it "does not maintain any accounts in the United States or New York" at eight of the ten banks. (CBN Memo. of Law in Support of Motion to Quash ("Mot."), ECF No. 99, at 5.) CBN remains silent as to the ninth bank—Goldman Sachs—neither claiming nor disclaiming ownership of any accounts there.

subpoena served on JPMorgan, dated February 13, 2017, seeks six categories of documents sufficient to show ownership or control over accounts held in the name of NNPC, CBN, and other Nigerian entities. (See Decl. of David H. Fromm ("Fromm Decl."), ECF No. 94–1, Ex. A Part 1.)

CBN acknowledges that there are a subset of JPMorgan accounts—which CBN terms as the CBN/NNPC Crude Oil Revenue Account, CBN/NNPC Gas Revenue Account, and CBN/NNPC Revenue Accounts—over which NNPC has the authority to instruct CBN to transfer funds from those accounts to other accounts held by the Government of Nigeria. (Mot. at 4.) Apart from those accounts, however, CBN claims that "NNPC has no authority whatsoever to instruct [ ] CBN to transfer funds from . . . any of the other" JPMorgan accounts. (Mot. at 5.)

Although the JPMorgan subpoena was served on February 13, 2017, CBN only became aware of it on March 6, 2017, after JPMorgan advised CBN's attorney. (See Reply Decl. of David H. Fromm, Esq. ("Fromm Reply Decl."), ECF No. 106, at ¶¶ 3–5; Decl. of Johnson O. Akinkunmi ("Akinkunmi Decl."), ECF No. 107, at ¶¶ 3–5.) Because CBN intended to quash the subpoena, JPMorgan delayed production of responsive records pending resolution of this motion. On March 25, 2017, CBN filed this motion to quash.

## DISCUSSION

I. Standing

CBN's motion broadly seeks to quash the subpoenas issued to all ten banks. To challenge a subpoena, however, CBN must "assert some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co., 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012). CBN does not appear to

have accounts at any of the ten financial institutions except JPMorgan. (Mot. at 5.) CBN therefore may not seek to quash the subpoenas directed at nine of the banks absent proof that it has a "right or privilege personal to it" in their accounts.

Notwithstanding that, CBN invokes an alter ego argument to assert an interest in other accounts at those nine banks. CBN claims that because it is an instrumentality of the Nigerian government, it has "a sufficient interest in information regarding accounts held by or for" the other Nigerian entities. (CBN Reply In Support of Motion to Quash ("Reply"), ECF No. 110, at 8.) But that argument is not persuasive. CBN cannot claim it is a separate and distinct entity impervious to NNPC's control in order to ward off Esso's requests for its bank account information at JPMorgan while simultaneously contending that it is part of an amalgam of the Nigerian government for the purpose of putting the accounts of the other Nigerian entities out of Esso's reach. Absent proof of the latter, this Court "must presume [CBN's] independence and treat [it] and [the other Nigerian entities] as separate entities." First City, Texas-Houston, N.A. v. Rafidian Bank, 1992 WL 296434, at *2 (S.D.N.Y. Oct. 6, 1992).

II. Timeliness of the Motion

"As an initial matter, th[is] Court holds that the motion to quash should not be dismissed as untimely" even though the return date of the JPMorgan subpoena has passed. Bouchard Transp. Co., Inc. v. Associated Elec. & Gas Ins. Servs. Ltd., 2015 WL 6741852, at *1 (S.D.N.Y. Nov. 4, 2015). Courts retain discretion to consider an untimely motion to quash, especially when good cause is shown. See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31, 2010 WL 2219343, at *5 (E.D.N.Y. Feb. 5, 2010). Here, JPMorgan did not alert CBN to the subpoena until its return date. (Akinkunmi Decl. at ¶¶ 3, 6; Fromm Reply Decl. at ¶¶ 3–5.) While CBN did not move to quash immediately, it appears

3

that it engaged in discussions about the subpoena with Esso's counsel in the intervening weeks. (Fromm Reply Decl. at ¶ 6.) Thus, CBN's motion, while untimely, may be considered by this Court.

III. Compliance with this Court's Individual Rules of Practice

Esso contends that the motion to quash should also be denied on grounds that CBN failed to comply with this Court's individual practices. The thrust of Esso's argument is that CBN failed to follow Rule III.A.iv, which directs parties to file a pre-motion conference letter in accord with Local Civil Rule 37.2, and to meet and confer before submitting a joint letter regarding any discovery dispute.

Rule III.A.iv does not apply to Rule 45 motions. For discovery motions, Rule III.A.iv directs parties to follow Local Rule 37.2, which applies to motions under Rules 26 through 37. Nevertheless, the parties' dispute on this issue reveals a tension between Rule III.A.i—which exempts discovery motions from the pre-motion conference requirements—and Rule III.A.iv, whose reference to Local Rule 37.2 requires a pre-motion conference for any discovery motion under Rules 26 to 37. That inconsistency presents an opportunity for this Court to amend its individual practices and obviate this argument in the future. In any event, this Court's individual practices, as currently drafted, have no bearing on a Rule 45 motion.

IV. Scope of the Subpoena

A. Account Information

In seeking to narrow the scope of the JPMorgan subpoena, CBN claims that the Foreign Sovereign Immunity Act ("FSIA") confers immunity "not only from liability, but also from the costs, in time and expense, and other disruptions attendant to discovery." (Mot. at 8 (citing NML Capital Ltd. v. Banco Central de la Republica Argentina, 652 F.3d 172, 194 (2d Cir.

4

2011)).) According to CBN, none of the JPMorgan accounts at issue belong to NNPC, rendering Esso's subpoenas impermissibly overbroad. (Mot. at 6.)

The problem with CBN's immunity argument is that, as a non-party, it does not face any liability in this proceeding. Nor does Esso seek to attach any of CBN's assets through the JPMorgan subpoena. Esso merely seeks information on CBN's accounts to ascertain NNPC's contacts with the United States. Thus, FSIA's immunities do not apply at this juncture to CBN. See Walters v. Industrial and Commercial Bank of China, Ltd., 651 F.3d 280, 286 (2d Cir. 2011) ("[T]wo types of immunity addressed in the FSIA: immunity of a foreign state from jurisdiction . . . and immunity from attachment and execution of property of a foreign state."). More importantly, Esso's subpoenas are directed solely at CBN's bank—JPMorgan—a commercial entity that has "no claim to sovereign immunity" and whose "compliance with [the] subpoena[ ] will cause [CBN] no burden and no expense." EM Ltd. v. Rep. of Argentina, 695 F.3d 201, 210 (2d Cir. 2011), aff'd, Rep. of Argentina v. NML Capital, Ltd., 134 S.Ct. 2250, 2256 (2014).

The JPMorgan accounts at issue can be divided into two separate categories: (1) accounts from which CBN claims the NNPC has the authority to instruct CBN to transfer funds; and (2) accounts over which CBN claims the NNPC has no authority. (Mot. at 4–5.) As to the first category, CBN acknowledges that under limited circumstances, NNPC "has the authority to instruct the CBN, which then issues corresponding instructions to JPMorgan, to transfer funds from [the first category of accounts] to other accounts," namely to "accounts owned by, or for the benefit of, the Government of Nigeria." (Mot. at 4.) These accounts are clearly relevant to Esso's jurisdictional discovery objective—to establish a nexus between NNPC and the United States through its purposeful use and control over these accounts. The authority

5

to transfer funds from a U.S. bank account, or to control such account, of course, does not conclusively confer jurisdiction. But it is a relevant factor in the analysis, and therefore enough to justify Esso's request for such accounts. See Turbana Corp. v. M/V "Summer Meadows", her engines, boilers, etc., 2003 WL 22852742, at *3 (S.D.N.Y. Dec. 2, 2003).

Less obvious is whether the second category of accounts are narrowly tailored to Esso's discovery objective. CBN claims that NNPC "has no authority whatsoever to instruct [ ] CBN to transfer funds from, or take any other action with respect to, any of" these accounts. (Mot. at 5.) Esso's silence on this point is not an admission that these accounts have little bearing on its efforts to establish jurisdiction. At this point, it simply does not know whether the accounts have any association with NNPC, be it through NNPC's authority to transfer funds, control, or use of them. See NML Capital Ltd., 134 S. Ct. at 2257 ("[T]he reason for these subpoenas is that NML does not yet know what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law.") (emphasis in original).

Esso asks for information on such accounts so that it can determine for itself whether they have been used by NNPC in some way that would bolster Esso's position that jurisdiction over NNPC is warranted. CBN claims that these documents are irrelevant to Esso's discovery objective because they are all in CBN's name and do not confer any authority on NNPC to control them. But given the tortured history of the underlying dispute concerning the existence of U.S. bank accounts, Esso is entitled to make its own determination. For example, some of the accounts in the first category invest NNPC with some control even though it is not officially an accountholder—a fact uncovered through Esso's investigative efforts. (See, e.g, Decl. of Matthew Gurgel in Opposition to Motion to Quash, ECF No. 116, Ex. 7.) Against that previous discovery, the second category of CBN's JPMorgan accounts may be relevant to the

issue of whether NNPC has controlled or used them in any way.

Further, the accounts may be relevant to Esso's ability to establish in rem jurisdiction if they were used to receive proceeds arising out of NNPC's commercial activities. Hausler v. JPMorgan Chase Bank, N.A., 740 F. Supp. 2d 525, 539 (S.D.N.Y. 2010) ("[T]he [electronic fund transfers] are indisputably in bank accounts located within the Court's territorial reach, and the Court thus has in rem jurisdiction."); Dardana Ltd. v. Yugaskneftegaz, 317 F.3d 202, 208–09 (2d Cir. 2003).

B. Temporal Scope

Finally, CBN objects to the temporal scope of the subpoenas, which seek records dating from January 1, 2009 to the present. (Fromm Decl., Ex. A.) This action was commenced in October 2014 as a petition to confirm an arbitration award obtained through an arbitration proceeding that started in July 2009. (Second Amended Petition at ¶ 28.) Esso claims that NNPC's contractual breaches giving rise to that arbitration began in 2007. (Opp. at 15.)

"Few cases discuss explicitly the appropriate time period for assessing whether a defendant's contacts with the forum state are sufficiently continuous and systematic for the purposes of general jurisdiction." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996) (internal quotation marks omitted). However, the phrase " 'continuous and systematic' necessarily requires that courts evaluate the defendant's contact with the forum state over time," and the temporal scope for discovery will "vary in individual cases" and "should be left to the court's discretion." Metropolitan Life Ins. Co., 84 F.3d at 569–70. Moreover, a "plaintiff seeking to establish a defendant's continued presence in a forum is entitled to more than a snapshot capturing a fixed moment in time." In re Terrorist Attacks on Sept. 11, 2001, 440 F. Supp. 2d 281, 285 (S.D.N.Y. 2006).

7

The JPMorgan subpoena fixes the start of the relevant period at January 2009—almost six years before this action was commenced. But this action is not a lawsuit; it is a proceeding to confirm an arbitration award. Thus, another date to consider in determining an appropriate time period is when the underlying arbitration was commenced. Here, Esso started an arbitration in Nigeria in July 2009, citing contractual breaches in 2007. In view of this relevant history, beginning the time period at January 2009 is reasonable. CBN proposes a two-year look-back date, beginning around 2012, but the basis for that suggestion is arbitrary and would not capture the systematic and continuous nature of NNPC's contacts with the United States during the relevant period. Given that enforcement of the arbitration award in Nigeria would always have been conditioned on judicial confirmation, NNPC's contacts with the United States is important to assess at or around the time the arbitration was commenced. See Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 765 (S.D.N.Y. 2004) ("[P]laintiffs are entitled to jurisdictional discovery regarding the extent of defendant Privatbank's general business contacts with the United States . . . [for] a period that includes the relevant period in this action and five preceding years.")

Despite finding that the start date of the relevant period is appropriate, the subpoena improperly seeks documents created after the commencement of this proceeding. Esso argues that this end-date is proper because any post-suit information "will also be relevant to identifying assets belonging to NNPC (or its alter ego) that will be subject to attachment if Esso prevails." (Opp. at 15–16.)

But that reason fails. First, collecting documents in anticipation of obtaining confirmation of the award is, at this juncture, highly speculative. Second, "discovery concerning an adversary party's assets is not permitted during the course of the litigation unless it is relevant

to the merits of a claim." Sequa Corp. v. Gelmin, 1995 WL 404726, at *3 (S.D.N.Y. July 7, 1995). The discovery Esso claims would help it to identify NNPC's assets is "properly reserved for post-judgment proceedings, when a judgment creditor seeks the information necessary to permit it to enforce the judgment." Sequa Corp., 1995 WL 404726, at *3. Esso has drawn nowhere close to that stage in this proceeding.

Accordingly, the time period set forth in the subpoena shall be limited from January 1, 2009 to October 22, 2014.

### C. Confidentiality of Bank Information

CBN claims that its banking information "contains confidential and proprietary information that should be protected from public disclosure by confidentiality order." (Mot. at 11.) This Court agrees, especially if it turns out that some of the accounts bear on NNPC's contacts with the United States.

The Amended Stipulated Protective Order (ECF No. 95) provides the appropriate protections for confidential materials, including CBN's request that its bank account information be designated for "attorneys eyes only." (See Amended Stipulated Protective Order at ¶¶ 5–8.) It provides that a "non-party that designates Discovery Material as 'Confidential' or 'Attorneys' Eyes Only'" may make those designations if it "believes in good faith that such Discovery Material constitutes or contains sensitive persona, business, commercial, financial . . . or proprietary information" and that a "Confidential" designation "would not sufficiently protect the Discovery Material." (Amended Stipulated Protective Order, ¶¶ 3, 5–6.) CBN therefore has a mechanism through which it can protect its confidential bank account information.

## CONCLUSION

For the foregoing reasons, the Central Bank of Nigeria's motion to quash is

granted in part and denied in part. The Clerk of Court is directed to terminate the motion pending at ECF No. 93.

Dated: August 15, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.